Nancy **GASPERINO**, as Administratrix of the Estate of Gregory Gasperino, Plaintiff-Appellee,

v.

**LARSEN FORD, INC.**, Defendant and Third-Party Plaintiff-Appellant,

v.

**FORD MOTOR COMPANY**, Third-Party Defendant-Appellee.

No. 302, Docket 33891.

United States Court of Appeals, Second Circuit.

Argued Nov. 18, 1969.

Decided May 25, 1970.

Edmund F. Lamb, New York City (Purdy, Lamb & Catoggio, Juvenal L. Marchisio, New York City, of counsel to Schaffner & D'Onofrio of New York City), for defendant and third-party plaintiff-appellant, Larsen Ford, Inc.

Joel Martin Aurnou, White Plains, N. Y. (Greenspan, Aurnou & Davis, White Plains, N. Y.), for appellee Gasperino.

William F. McNulty, New York City (of counsel to Daniel J. Coughlin, New York City), for third-party defendant-appellee, Ford Motor Co.

Before LUMBARD, Chief Judge, ANDERSON, Circuit Judge, and DANAHER, Senior Circuit Judge.*

DANAHER, Senior Circuit Judge:

It will suffice for present purposes to summarize the background. In April, 1964 Ford Motor Company (hereinafter Ford), caused to be delivered to a storage basement owned by its dealer Larsen Ford, Inc. (hereinafter Larsen), approximately one hundred new Mustang model cars. Ford desired that the new models be secluded from public view while a promotional campaign was being perfected. It had been arranged that Larsen was to receive a substantial consideration for the use of its premises. Larsen already had some thirty cars of its own in the basement so that after delivery of the new Mustangs, cars were tightly parked in rows, side by side, and bumper to bumper.

To ready the cars for public showing on April 14, Gregory Gasperino, an employee of Ford, proceeded to the Larsen basement garage on April 3, 1964. He worked long hours over the next few days, including Saturday, April 4 and Sunday, April 5. Joined by other Ford employees, Gasperino resumed work on Monday morning, April 6, 1964, and was so employed when, about 2:30 P.M., he collapsed. Police were called, oxygen was administered to Gasperino and to two of his co-employees, but at 3:50 P.M., after removal to a hospital, Gasperino died. An autopsy disclosed that the cause of death was an occlusion of the coronary arteries induced by carbon monoxide poisoning, superimposed upon a pre-existing, but previously unknown, atherosclerosis. The medical evidence was uncontroverted. The record overwhelmingly supports Judge Edelstein's conclusion that the proximate cause of death was carbon monoxide poisoning which precipitated the fatal heart attack.

The operations in which Gasperino and his co-employees were engaged included installation of wheel covers and of radio antennas, removal of chucks or blocks which had fastened the cars to carriers,

---

* John A. Danaher, Senior Circuit Judge of the District of Columbia Circuit, sitting by designation.

and the checking of fluid levels. The engine of each car had to be started in order to jockey each car into position to afford room to carry out the required operations. The result, as one witness put it, was that there "was quite a bit of raw exhaust fumes in the air."

The Larsen basement had no mechanical ventilation. Indeed Larsen personnel had been forbidden to work in the basement storage area. Moreover, the Larsen mechanics in the dealership's shop upstairs were protected by necessary hoses and exhaust systems. Carl Larsen, President of Larsen Ford, Inc., knew that the Mustangs were to be prepared for public exhibition and was aware of the nature of the operation to be performed on its premises.

Under such circumstances, the district judge as the trier of fact found that Larsen's knowing failure to provide means of exhausting carbon monoxide from the basement area had resulted in denying protection to Gasperino and his co-employees, and accordingly he concluded that Larsen had violated the duty imposed upon it pursuant to section 299 of the Labor Law of the State of New York, McKinney's Consol. Laws, c. 31.[1] Judge Edelstein reasoned that the basement area, within the meaning of section 299, had become a "work room in a factory" as to which Larsen was bound to provide "proper and sufficient means of ventilation." The trier thus viewed section 299 as designed to protect workingmen in "factories," and decided that Gasperino as such a workman was a member of the class for whose protection the statute had been enacted.[2]

It was conceded that there were no mechanical ventilating systems in the basement work area. Thus, the trial judge additionally found that Larsen, while aware of the operations to be performed, had failed to provide means of ventilation to exhaust the carbon monoxide generated during the course of readying the cars, and so had failed to provide a safe place in which Gasperino and his co-employees could work. Judge Edelstein concluded that such failure constituted a violation of section 200 of the Labor Law of New York, and further that non-compliance with the statutory duty so devolving upon Larsen was active negligence which barred Larsen's claim to indemnity from Ford. We agree.

Section 200 clearly applied for the benefit of all persons employed in the Larsen premises or "lawfully frequenting such places." Larsen was quite aware of the purposes for which the work area was to be utilized by the Ford employees. The trier further found, fully supported in the record, that there existed in the Larsen basement a "deceptively dangerous condition." Lacking ventilation, indeed with some of the windows covered with plastic sheets, with car after car emitting exhaust fumes, there was no evidence that the dangerous conditions prevailing were open and obvious. On the contrary, it would strain credulity to assume that Gasperino and his co-employees,[3] all experienced workers, would still have continued to conduct

---

1. Gasperino v. Larsen Ford, Inc., 300 F. Supp. 1182, 1186, note 2, and accompanying text.

2. Without hesitancy we could agree had Gasperino been employed by Larsen. Cf. Osborne v. Salvation Army, 107 F.2d 929 (2d Cir. 1939). We have been cited to no decision of the New York Court of Appeals, and our diligent search has disclosed none, which holds that § 299 applies to a workman employed by other than the owner or lessee of the building in which operations are being conducted.

We think it unnecessary further to consider Judge Edelstein's appealing treatment of this aspect of the case, for we are satisfied that the judgment must be affirmed upon his alternative conclusion that section 200 of the Labor Law here applied.

3. There were at least five men engaged in the operations, each individual working independently of the other, moving out cars "as we needed them to work on them."

**1154**

the required operations had they been aware of the threat to their safety.[4]

Recognizing Larsen's duty to provide a safe place to work within the meaning of section 200, and accepting the trier's finding that Gasperino was not contributorily negligent, such circumstances require us to sustain Judge Edelstein's ultimate conclusion that Larsen's failure in the respects noted constituted active negligence.[5] Our disposition of this case must be deemed controlled by our decision in Burns v. Cunard Steamship Company, 404 F.2d 60 (1968), cert. denied, 393 U.S. 1117, 89 S.Ct. 993, 22 L.Ed.2d 122 (1969).

We fairly should observe that the record here discloses a case extremely well tried by respective counsel. Judge Edelstein's detailed findings obviously took into account the claims of the parties on the various aspects advanced before him. In the respects which we have accepted as decisive, we perceive no error in the conclusions reached by Judge Edelstein. Having carefully studied the record and the authorities cited to us, we are satisfied that the Plaintiff-Appellee is entitled to her judgment on the basis outlined and, in accordance with precedent, that Larsen was not entitled to indemnity from Ford.

The Defendant-Appellant also claims that the damages awarded were excessive. That an award may be reviewed is beyond peradventure. Dagnello v. Long Island Rail Road Co., 289 F.2d 797 (2 Cir. 1961); Wicks v. Henken, 378 F.2d 395 (2 Cir. 1967); Caldecott, Admx. v. Long Island Lighting Co., 417 F.2d 994 (2 Cir. 1969) and Bazydlo v. Placid Marcy Co., Inc., 422 F.2d 842 (2 Cir. 1970). Larsen has advanced its contention earnestly, and we may observe that at first blush, the award seems excessive.

However, taking account of Grunenthal v. Long Island R. R., 393 U.S. 156, 159, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968) we have ourselves examined the record evidence involved in the findings of the trial judge who had carefully detailed the respective elements on which he based the award. Judge Edelstein approached the problem in respects not greatly different from those considered in United States v. Furumizo, 381 F.2d 965 (9 Cir. 1967), where the judge, sitting without a jury, spelled out the factors upon which he predicated his computation and the ultimate award. See also United States v. Sommers, 351 F.2d 354, 359–360 (10 Cir. 1965); O'Connor v. United States, 269 F.2d 578 (2 Cir. 1959). After a fair appraisal of the claims advanced by Larsen measured against the findings, not without support in the record, we are satisfied the award should be permitted to stand.

Affirmed.

---

4. Quite apart from Judge Edelstein's finding, it reasonably may be presumed that the deceased Gasperino acted with due care in view of the human instinct of self-preservation and the natural disposition of people to avoid personal harm. Cf. Eastern Air Lines v. Union Trust Company, 95 U.S.App.D.C. 189, 221 F.2d 62, 72 (1955).

5. The trier found that Gasperino "was in no way negligent," and that Larsen "was the active tortfeasor if those words have any meaning at all." 300 F.Supp. 1191.