Phillip GUTIERREZ, et al.

v.

MOBIL OIL CORPORATION, et al.

Robert EHRLICH, Jr., et al.

v.

MOBIL OIL CORPORATION, et al.

Civ. Nos. A–92–CA–305, A–92–CA–381.

United States District Court,
W.D. Texas,
Austin Division.

July 10, 1992.

Robert Dale Kizer, Austin, Tex., M. Diane Dwight, J. Keith Hyde, Walter Umphrey Law Firm, Beaumont, Tex., George H. Nelson, Mark C. Hall, Nelson & Hall, Lubbock, Tex., Brian Walter Bishop, Gray & Becker, P.C., Austin, Tex., for plaintiffs.

Walter H. Mizell, Brown, Maroney, Rose, Barber & Dye, Austin, Tex., Charles W. Sutter, Mobil Oil Corp., Fairfax, Va., Charles F. Herring, Jr., Jones, Day, Reavis & Pogue, Stephen E. McConnico and Jennifer K. Lipinski, Scott, Douglass, & Luton, Austin, Tex., Keith E. Parks, Ronald Scott, Bracewell & Patterson, Debra K. Broussard, The Coastal Corp., Houston, Tex.,

Philip F. Ricketts, Austin, Tex., William Key Wilde, Bracewell & Patterson, Houston, Tex., Andrew M. Taylor, Austin, Tex., for defendants.

### ORDER

NOWLIN, District Judge.

Before the Court is the plaintiffs' Motion to Remand, filed May 28, 1992. Having reviewed this motion and all of the responses and supplemental responses thereto, this Court is of the opinion that this motion should be GRANTED.[1] The Court UNCONSOLIDATES AND REMANDS both of these actions to state court.

### I. BACKGROUND

Commencing this action in state court, the plaintiffs expressly allege numerous causes of action based upon state law against six defendants. Together the six defendants allegedly own, control, and operate a large, multi-tank storage facility for gasoline, petroleum, and other fuel products.

In general, the plaintiffs allege that the six defendants were grossly negligent and negligent in permitting toxic substances to escape from the confines of the facility causing contamination of the plaintiffs' properties. The plaintiffs allege that these substances have contaminated "their airways, land, and underlying water supply." The plaintiffs also allege that they will likely suffer future personal injuries caused by exposure to these substances. Because of the allegations that the trespass and nuisance violations are continuing, the plaintiffs also seek an injunction to stop the use of the storage facility and to prevent further migration of contaminants from the defendants' property.

Joined by all of the other defendants, Defendant CITGO followed the correct procedures to remove this action to federal court. The defendants argue that the plaintiffs effectively have pleaded certain claims that are preempted by the Clean Air Act and that federal question jurisdiction, therefore, exists. Adamantly denying the assertion of any federal claims, the plaintiffs have filed a motion to remand the action to state court asserting that this court lacks jurisdiction over the claims.

Subsequent to the removal of this action, the same defendants all joined in the removal of a similar action. The second action's alleged issues and facts were sufficiently similar to the first action that this Court consolidated the two actions.

### II. REMOVAL JURISDICTION UNDER THE CLEAN AIR ACT

Pursuant to an order of this Court, the parties were invited to address the implications of three cases: *International Paper Co. v. Ouellette*, 479 U.S. 481, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987); *Ford v. Murphy Oil U.S.A., Inc.*, 750 F.Supp. 766 (E.D.La.1990); and *Gade v. National Solid Wastes Management Association*, — U.S. —, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992).[2]

In *Ford v. Murphy Oil*, the federal district remanded the plaintiffs common law claims to the state court. *Ford*, 750 F.Supp. at 773. Even though, for argument's sake, it assumed that the common law claims of the plaintiffs were preempted by the Clean Air Act or the Clean Water Act, the federal court recognized that neither act contains any special jurisdictional grant like ERISA or the labor statutes or provides any remedies like those sought by the plaintiffs. *See id.*

Although a cursory glance at *Gade v. National Solid Wastes* might imply some possibility of federal preemption in this action, a careful analysis of that decision demonstrates no support for an argument that the Clean Air Act preempts the plaintiffs' claims. In *Gade*, the Court held based upon the provisions and purposes of the entire Occupational Health and Safety Act:

---

**1.** This Court does not award or impose any sanctions requested by the Plaintiffs pursuant to Rule 11.

**2.** None of the parties had discussed or mentioned these cases before this Court's order inviting them to do so.

nonapproved state regulation of occupational safety and health issues for which a federal standard is in effect is impliedly pre-empted as in conflict with the purposes and objectives of the OSH Act. *Gade,* at ——, 112 S.Ct. at 2383 (citations omitted). In *Gade,* the Court recognized that Congress mandated that states comply with an approval process to implement any different, whether stricter or not, standards for occupational health or safety issues for issues already regulated by federal law or regulations. *Id.* Under the OSH Act, states are permitted to assume an enforcement role without federal approval *only* if no federal standard is in effect. *Id.* The federal Clean Air Act (the CAA) and the federal Clean Water Act (the CWA) do not impose any such restriction upon the states.

■ The *Gade* decision addresses the express and implicit supremacy of federal regulation, under the OSH Act, over state regulation. The Court did recognize that the OSH Act expressly did not displace or affect any statutory or common law rights of employees and employers. *See id.* at ——, 112 S.Ct. at 2382–83 (referring to 29 U.S.C. § 653(b)(4). The Court stated that the main issue is:

> at what point the state regulation sufficiently interferes with federal regulation that it should be deemed pre-empted under the [OSH] Act.

*Id.* at ——, 112 S.Ct. at 2387. Unlike the OSH Act, the Clean Air Act expressly permits more stringent state regulation of stationary sources. Consequently, more stringent state regulation does not interfere with the Clean Air Act.

Addressing the preemptive scope of the Clean Water Act, the Supreme Court has stated:

> The CWA precludes only those suits that may require standards of effluent control that are incompatible with those established by the procedures set forth in the Act. The savings clause specifically preserves other state actions, and there-

fore nothing in the act bars aggrieved individuals from bringing a nuisance claim pursuant to the law of the *source* State.

*International Paper Co. v. Ouellette,* 479 U.S. at 497, 107 S.Ct. at 814 (emphasis in original).[3] "By its terms the CWA allows States ... to impose higher standards on their own point sources, ... and this authority may include the right to impose higher common-law as well as higher statutory restrictions." *Id. citing to Milwaukee v. Illinois,* 451 U.S. 304, 328, 101 S.Ct. 1784, 1798, 68 L.Ed.2d 114 (1981) (*"Milwaukee II "*).

The preservation of state common law nuisance actions is implicit in the Supreme Court's decision in *International Paper.* Even though a state's nuisance law may impose separate standards and thus create some tension with the federal permit system, the source is only required to look to a single additional authority, the law of the source state. *See International Paper,* 479 U.S. at 499, 107 S.Ct. at 815.

The Sixth Circuit has held that persons' claims under state law are not preempted by the Clean Air Act. *See Her Majesty The Queen v. City of Detroit,* 874 F.2d 332, 344 (6th Cir.1989). The state law claims asserted by the plaintiffs were held to be supplemental of the other applicable legal and administrative requirements of the CAA. *See id.* The Sixth Circuit case involved claims under a state law that left to the state courts the task of developing a state common law on environmental quality. *Id.* at 338. The Sixth Circuit rejected arguments by the defendants that the plaintiffs' state law claims had been absorbed into federal law. *Id.* at 341. Although the plaintiffs were not seeking to enforce an "emission standard or limitation," the court held that the savings clause in the CAA preserves actions to seek "any other relief," as well as enforcement actions. *See id.* at 343 (discussing 42 U.S.C. § 7604(e)). This Court agrees with the reasoning of the Sixth Circuit that:

---

**3.** The Supreme Court has recently repeated its holding that the Clean Water Act does not supplant *state* common law remedies from the source state. *See Arkansas v. Oklahoma,* —— U.S. ——, ——, 112 S.Ct. 1046, 1053, 117 L.Ed.2d 239 (1992).

... the CAA displaces state law only to the extent that state law is not as strict as emission limitations established in the federal statute.

*Id.* at 342 (emphasis in original).

The Clean Water Act and the Clean Air Act have strikingly similar provisions. The savings clause of the Clean Water Act states:

Nothing in this section shall restrict *any right* which any person (or class of persons) may have under any statute or common law to seek enforcement of *any* effluent standard or limitation or to seek any other relief (including relief against the Administrator or a State agency).

33 U.S.C. § 1365(e) (emphasis added). On its face, this statute permits persons to commence state common law actions founded in tort law for damages and appropriate injunctive relief.

The Supreme Court has stated that some state law may be preempted by other provisions of the Clean Water Act. *See International Paper*, 479 U.S. at 493, 107 S.Ct. at 812 (emphasizing the phrase "in this section" from the savings clause). Only if an act does not speak directly to the issue must the federal courts seek guidance from the goals and policies of the act. *See id.* (citation omitted). In *International Paper*, the Court held that an affected state's laws were preempted under the CWA only to the extent that the state law is applied to a source located in another state. *Id.*, 479 U.S. at 500, 107 S.Ct. at 816.

Defendant CITGO argues that the holding *International Paper* is distinguishable from the present action because the Clean Water Act does not contain a nuisance provision. CITGO asserts that the nuisance provision in the Clean Air Act, as implemented through the Texas State Implementation Plan, controls the plaintiffs' right to recover in this action.

With identical language to that used in the Clean Water Act, the Clean Air Act's savings clause states:

**4.** The Clean Water Act should be interpreted in the same manner because of its comparable

Nothing in this section shall restrict *any right* which any person (or class of persons) shall have under any statute or common law to seek enforcement of *any* emission standard or limitation *or to seek any other relief* (including relief against the Administrator or a State agency)....

42 U.S.C. § 7604(e) (emphasis added). In the same section the CAA specifically defines the term "emission standard or limitation under this chapter," but the CAA does not define the term "any emission standard or limitation." *See* 42 U.S.C. § 7604(f). When construed in light of this express definition in the same section, the term "any emission standard or limitation" must be broader and encompass standards and limits beyond those established pursuant to the Clean Air Act, whether by federal law and regulations or by the federal adoption of a state implementation plan.[4] Also, the CAA expressly does not prohibit persons from asserting "any right ... under any statute or common law ... to seek any other relief." *See* 42 U.S.C. § 7604(e).

In the Clean Water Act and the Clean Air Act, Congress did not intend to preempt state authority. Congress intended to set minimum standards that states must meet but could exceed. The Clean Air Act clarifies the retention of authority by the states:

Except as otherwise provided in sections 1857c–10(c), (e), and (f) (as in effect before August 7, 1977), 7543, 7545(c)(4), and 7573 of this title (preempting certain State regulation of moving sources) nothing in this chapter shall preclude or deny the right of any State or political subdivision thereof to adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution; *except that if an emission standard or limitation is in effect under an applicable implementation plan or under section 7411 or section 7412 of this title, such State or political subdivision may not adopt or enforce any*

language. *See* 33 U.S.C. § 1365(f).

*emission standard or limitation which is less stringent than the standard or limitation under such plan or section.*

42 U.S.C. § 7416 (emphasis added).[5] Pursuant to this provision, states have the right and jurisdiction to regulate activities occurring within the confines of the state. *See Arkansas v. Oklahoma,* — U.S. at ——, 112 S.Ct. at 1053. The Clean Air Act expressly allows the application of more stringent emission standards by the source state.

■ In the recent 1990 amendments to the CAA, Congress expressly states:

No emission standard or other requirement promulgated under this section shall be interpreted, construed or applied to diminish or replace the requirements of a more stringent emission limitation or other applicable requirement ... or a standard under State authority.

42 U.S.C. § 7412(d)(7). The only state laws that would be inconsistent with, and therefore preempted by, the Clean Air Act are those state laws that purport to allow less stringent requirements or limitations on pollution from stationary sources within the state.[6] This section of the Clean Air Act also requires the establishment of specific standards for the hazardous air pollutants that it lists. *See* 42 U.S.C. § 7412(b) and (d). Additionally, in another subsection, this same section states:

Nothing in this subsection shall preclude, deny or limit any right of a State or political subdivision thereof to adopt or enforce any regulation, requirement, limitation or standard (including any procedural requirement) that is more stringent that a regulation, requirement, limitation or standard in effect under this subsection or that applies to a substance not subject to this subsection.

42 U.S.C. § 7412(r)(11).

The 1990 amendments to the Clean Air Act slightly amended but reemphasized its purpose:

that air pollution prevention (that is, the reduction or elimination, through any measures, of the amount of pollutants produced or created at the source) and air pollution control at its source is the primary responsibility of States and local governments.

42 U.S.C. § 7410(a). These 1990 amendments do not change any of the conclusions of this Court's holding. The legislative history of these amendments supports the interpretation that Congress, in enacting the various environmental laws, intended to have a federal baseline which state law must meet but may exceed:

To assure that such preemption of State or local law, whether statutory or common, does not occur, environmental legislation enacted by the Congress has consistently evidenced great care to preserve State and local authority and the consequent remedies available to the citizens injured by the release of harmful substances to the environment.

*See* S.Rep. 101–228, 101st Cong., 2d Sess. 197, *reprinted in* 1990 U.S.C.C.A.N. 3385, 3582.

To hold that the Clean Air Act preempts purely private state law causes of actions for damages would preclude relief for any person who can prove the elements of the common law claims. Such a result is clearly not intended under, and would not further the goals of, the Clean Air Act. Defendant CITGO argues that the Clean Air Act: "provides remedies to persons attempting to recover for violations of the Act," "also provides compensatory remedies similar to the property damages sought by the plaintiffs," and "provides for causes of action and remedies similar to those sought by Plaintiffs in the present action." *See Defendant CITGO Petroleum Corporation's Supplemental Brief in*

---

**5.** The Clean Water Act has a similar provision. *See* 33 U.S.C. § 1370. The Supreme Court has recognized that this provision allows States to adopt more demanding pollution standards than those required under the CWA. *See Arkansas v. Oklahoma,* — U.S. at ——, 112 S.Ct. at 1057.

**6.** The specific items expressly preempted from state regulation, specifically moving sources, are, of course, also preempted.

*Support of Removal,* at 13 (filed July 2, 1992) (referring to 42 U.S.C. § 7604). The only remedies provided by the Clean Air Act, pursuant to 42 U.S.C. § 7604, are to obtain enforcement of the standards promulgated pursuant to the Act or to have the court impose civil penalties against violators of such standards. *See* 42 U.S.C. § 7604(a). Any civil penalties imposed under this section do not go to the plaintiffs; instead, these penalties must either go to the United States Treasury or be deposited in a special fund for beneficial mitigation projects. *See* 42 U.S.C. § 7604(g). Additionally, the court cannot impose such a civil penalty in excess of $100,000 in any action under that subsection. *See id.* at (g)(2). Entirely opposite to the defendants' arguments, the Clean Air Act does not provide similar or comparable remedies to those sought by plaintiffs in common law actions for damages.

Construing very similar provisions of the Clean Water Act, the Supreme Court has held that citizens may sue, under the CWA's citizen suit provision, only to enjoin or otherwise abate an *ongoing* violation. *See Gwaltney of Smithfield v. Chesapeake Bay Foundation,* 484 U.S. 49, 59, 108 S.Ct. 376, 382, 98 L.Ed.2d 306 (1987). Under the CWA, citizens can only seek civil penalties to be imposed against an entity that is continuing to violate the Act. *See id.* Citizens cannot sue under the CWA for wholly past violations. *See id.* 484 U.S. at 67, 108 S.Ct. at 386. The Court's interpretation of the CWA is directly applicable to the Clean Air Act as well. Again, as discussed above, any civil penalties are not paid to the plaintiffs in such citizen suits. Because persons are barred from bringing federal actions for past violations and are barred from obtaining any compensatory damages under the federal acts, to hold that the Clean Air Act preempts state common law actions would entirely preclude any compensatory relief that such plaintiffs may show is justified. Such a ruling would not further the goals of the CAA or the intent of Congress.

This Court holds that the Clean Air Act does not preempt the plaintiffs' various common law claims. Although this Court is concerned with the manageability and efficiency of this dual system that Congress has created, this Court must adhere to the language of the Act and the precedent established by the Supreme Court. Any change in the express wording of the statute must come from Congress and any change in the interpretation of such wording must come from a higher court. Such a conclusion is entirely consistent with the goals an purposes of the Clean Air Act, as well as the common law.

■ This Court is aware that compliance by the defendants with all applicable legal standards and regulations reasonably should preclude any injunctive relief. Injunctive relief for a nuisance is an extraordinary remedy and should be very sparingly used. *See* Keeton and Prosser, *Prosser and Keeton On Torts,* § 88A, at 630–633 (5th ed. 1984). Discussing the fact that certain activities may be legislatively authorized, the authors state that "[t]his does not mean that the enacting body intended to immunize a defendant (even if it could do so) who made this kind of use at any location within the area of permissible use and under all circumstances." *Id.* at 633. Although the authors recognize that an injunction would probably not be proper against activities complying with a legislative authorization, "... a court could conclude that there was such an unreasonable interference as to constitute a private nuisance or an unconstitutional taking or private property." *See id.*

In this action the plaintiffs have not pleaded nor have they artfully avoided pleading federal claims. The primary use of the Clean Air Act to the defendants is as a defense to show their compliance therewith. As a defense, the Clean Air Act does not create federal court jurisdiction. This Court expressly does not decide any of the substantive issues concerning the plaintiffs' state law claims. This Court is confident that the state courts will properly decide those claims.

## III. CONCLUSION

The Clean Air Act does not preempt source-state common law claims against a

**1286**

stationary source. Accordingly, IT IS OR-DERED that these two causes of action are hereby UNCONSOLIDATED AND RE-MANDED, pursuant to 28 U.S.C. § 1447(c), to the state courts from which they came, because this Court lacks subject matter jurisdiction to address these purely state common law claims involving non-diverse parties.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1447(c), all of the defendants shall pay reasonable attorney's fees and costs incurred by the plaintiffs as a result of the removal. The defendants shall each be responsible for their own share of this amount: The total amount shall be divided by the number of defendants, and each defendant shall pay its share. The parties are encouraged to reach an agreement as to the amount of fees. Otherwise, this Court will entertain a motion for fees and costs in accordance with the law and the Local Rules of this Court.