In re JACKSON, et al., Plaintiffs,

v.

**GENERAL MOTORS CORPORATION,**
**et al., Defendants.**

Nos. 08 Civ. 10879(PAC), 09 Civ.
9119(PAC), 09 Civ. 9120(PAC),
10 Civ. 6189(PAC).

United States District Court,
S.D. New York.

Feb. 16, 2011.

John E. Durst, Jr., The Durst Law Firm, New York, NY, John Dearie, Law J.C. Dearie, Bronx, NY, for Plaintiffs.

John Patrick Hannigan, John A. Risi, Bleakley Platt & Schmidt, LLP, White Plains, NY, Alexander P. Imberg, David M. Rice, Carroll, Burdick & McDonough L.L.P., Michael Alan Tanenbaum, Stephen Novakidis, Sedgwick, Detert, Moran & Arnold, LLP, San Francisco, CA, Samuel Goldblatt, Nixon Peabody LLP, Boston, MA, Barbara Amelia Lukeman, Nixon Peabody LLP, Jericho, NY, Gilbert S. Keteltas, Howrey LLP, Washington, DC, Shaun Adam Bean, Sedgwick, Detert, Moran & Arnold, LLP, Newark, NJ, for Defendants.

## ORDER

PAUL A. CROTTY, District Judge:

## BACKGROUND

Plaintiffs (bus drivers, shifters, and mechanics employed by the New York City Transit Authority ("NYCTA")) have filed seven complaints,[1] claiming that Defendant manufacturers of urban transit buses and diesel engines are liable for harm caused to Plaintiffs due to Plaintiffs' ingestion of harmful diesel exhaust fumes. (Am. Compl. ¶ 35; 113.) Plaintiffs assert claims for negligence and strict product liability,[2] (*Id.* ¶¶ 85–96, 111–12.), claiming that the harm was caused by the design of Defendants' buses and engines, (Am. Compl. ¶ 31–99), and the lack of adequate warnings regarding such fumes, (*Id.* ¶ 100–13). Defendants now move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), arguing that Plaintiffs' claims are preempted by the Clean Air Act ("CAA"). Defendant Cummins also moves to dismiss under Fed.R.Civ.P. 4(m) for failure to make timely service.

In their opposition to the instant motion, Plaintiffs indicated that they have abandoned certain of their claims. Specifically:

> The plaintiffs withdraw their claims that the defendants should have designed their vehicles in such a way as to further reduce the emissions of particulate matter beyond that required by the Clean Air Act standards and regulations. (Pl. Mem. 1.)

> Plaintiffs do not intend to proceed on the design or manufacturing defect theories of products liability . . . whether the Court concludes that they are preempted or not. (*Id.* 2.)

> Plaintiffs agree that the [CAA] preempts a claim that a vehicle is defective because it was not designed in a manner to more effectively "control emissions." (*Id.* 6.)

As a result, the following claims remain:

> The plaintiffs allege that they suffered personal injuries from exposure to diesel exhaust emissions from the vehicles and engines manufactured by the defendants. The claim is that the defendants were negligent. The evidence will include proof that the defendants' vehicles *did not meet* the emissions standards of the Clean Air Act. (*Id.* 1.)

> The plaintiffs allege that the vehicles were defective under the negligence and products liability common law of the State of New York, because they failed to provide adequate warnings of latent dangers resulting from foreseeable uses and foreseeable misuses, of their products, of which they knew or should have known. (*Id.* 1–2.)

> The plaintiffs allege that the defendants are liable because they negligently failed to warn of such latent dangers associated with the use of their products after the vehicles were sold. (*Id.* 2.)

In sum, Plaintiffs continue to allege (1) that the design of Defendants' buses violated the emissions standards set out in the CAA and (2) that the Defendants negligently failed to warn Plaintiffs about the

---

1. These cases are *Jackson v. Gen. Motors Corp.*, 08 Civ. 10879; *Casey v. Gen. Motors Corp.*, 07 Civ 10880; *Anselmo v. Gen. Motors Corp.*, 08 Civ 2045; *Martinez v. Gen. Motors Corp.*, 09 Civ.2047; *Butnick v. Gen. Motors Corp.*, 09 Civ. 9120; *Santoro v. Gen. Motors Corp.*, 09 Civ. 9119; and *Moran v. Grumman Aerospace Corp.*, 10 Civ 6189. *Jackson, Casey, Anselmo,* and *Martinez* have been consolidated into the *Jackson* action. *Butnick, Santoro,* and *Moran* are related cases.

2. Spouses of certain of the Plaintiffs also bring claims for loss of support, services, consortium, and companionship. (Am. Compl. ¶¶ 114–206).

latent dangers of the exhaust fumes emitted by the buses. For the following reasons, Defendants' motion for judgment on the pleadings is GRANTED in its entirety. Defendant Cummins' motion to dismiss on procedural grounds is, therefore, moot.

## LEGAL STANDARDS

■ "The same standard applicable to Fed.R.Civ.P. 12(b)(6) motions to dismiss applies to Fed.R.Civ.P. 12(c) motions for judgment on the pleadings." *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir.2010) (citation omitted). That is, "judgment on the pleadings is appropriate only if, drawing all reasonable inferences in favor of the non-moving party, it is apparent from the pleadings that the moving party is entitled to judgment as a matter of law." *Aktiebolag v. Kremers Urban Development Co.*, No. 99 Civ. 8928, 2000 WL 257125 (S.D.N.Y. Mar. 8, 2000); *O'Connell v. Massanari*, No. 99 Civ. 4987, 2001 WL 611333 (S.D.N.Y. June 4, 2001) ("[A] court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant."); *see Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir.2010) (citation omitted).

■ Under the Supremacy Clause, federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of Any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. As a result, "state laws that interfere with, or are contrary to the laws of congress, made in pursuance of the constitution are invalid." *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991) (internal quotations and citation omitted). The Supremacy Clause "may entail pre-emption of state law either by express provision, by implication, or by a conflict between federal and state law." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). In every preemption analysis, courts must look to Congress' intent to determine the scope of the preemption. *See Wyeth v. Levine*, 555 U.S. 555, 129 S.Ct. 1187, 1194, 173 L.Ed.2d 51 (2009).

## DISCUSSION

### I. Preemption Under the CAA

The CAA empowers the Environmental Protection Agency ("EPA") to establish emissions standards for motor vehicles. 42 U.S.C. § 7521; *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 452 (D.C.Cir.1998) ("Subchapter II of the [CAA] vests in the federal government the almost exclusive responsibility for establishing automobile emission standards for new cars."). Under the authority of the CAA, the EPA has developed an extensive set of regulations regarding emissions, in addition to comprehensive enforcement provisions and penalties. *See* 42 U.S.C. § 7521.

■ In enacting the CAA, Congress declared that such motor vehicle emission regulations were necessary to "prevent a chaotic situation from developing in interstate commerce in new motor vehicles.... The ability of those engaged in the manufacture of automobiles to obtain clear and consistent answers concerning emission controls and standards is of considerable importance." H.R.Rep. No. 90–728, *as reprinted in* 1967 U.S.C.C.A.N. 1938, 1956–57. To that end, Congress included a sweeping preemption provision in the CAA. Section 209(a) of the CAA states, in part, that:

> No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of

emissions from new motor vehicles or new motor vehicle engines. . . .

42 U.S.C. § 7543(a). As such, "Congress preempted states—and their political subdivisions—from creating their own emissions standards for new vehicles because Congress was concerned about the possibility of 50 different standards applying to one vehicle that so easily moves across state lines." *Metropolitan Taxicab Board of Trade v. City of New York*, 633 F.Supp.2d 83, 104 (S.D.N.Y.2009), *aff'd*, 615 F.3d 152 (2d Cir.2010). Indeed, it is crystal clear that, absent waiver, a state cannot promulgate its own emissions standards for vehicles—such regulations are expressly preempted by § 209(a) of the CAA.

## II. State Common Law Tort Claims May Be Preempted by the Clean Air Act

It is settled that there is no private right of action for damages under the CAA. *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir.1990) (citing *Middlesex County Sewerage Authority v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 n. 27, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)). Plaintiffs, however, do not bring their claim under the CAA but, rather, attempt to use the CAA to establish a standard with which they allege Defendants did not comply. (Pl. Mem. 1.) It is on this basis that Plaintiffs bring their state common law negligence claims. (*Id.*) The question that this Court must answer, then, is whether the language of § 209(a) expressly preempts state common law tort actions premised on failure to meet the federal standards promulgated by the EPA pursuant to the CAA.

In *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), the defendants argued that state common law tort claims brought by plaintiffs were preempted by the Federal Cigarette Labeling and Advertising Act ("1965 Act") and the Public Health Cigarette Smoking Act ("1969 Act"). In coming to its conclusion, the Supreme Court held that the scope of the preemption provisions in the Act could not "be limited to positive enactments," *id.* at 523, 112 S.Ct. 2608, and therefore that "sweeping congressional efforts to preempt state regulation also bar state damages claims," *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 370 (7th Cir.1993). According to the Supreme Court, "[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Cipollone*, 505 U.S. at 521, 112 S.Ct. 2608.

In order to apply this principle to the 1965 and 1969 Acts, the Court "fairly but . . . narrowly construe[d] the precise language of [the preemption provisions] and [looked] to each of Petitioner's common-law claims to determine whether [they] were] in fact pre-empted." *Cipollone*, 505 U.S. at 523, 112 S.Ct. 2608. Ultimately, the Court held that the narrowly-tailored 1965 Act, which reads: "[n]o statement relating to smoking and health shall be required in the advertising of [properly labeled] cigarettes," did not preempt state law damages claims. *Cipollone*, 505 U.S. at 519–20, 112 S.Ct. 2608. On the contrary, however, the *Cipollone* court held that the preemption provision of the 1969 Act, which bars " 'requirement[s] or prohibition[s] . . . imposed under state law,' signaled legislative intent to preempt state law damages actions." *Shaw*, 994 F.2d at 370; *see Cipollone*, 505 U.S. at 524–25, 112 S.Ct. 2608. According to the Supreme Court, the 1969 Act provision "sweeps broadly and suggests no distinctions between positive enactments and common

law; to the contrary, those words easily encompass obligations that take the form of common-law rules." *Cipollone*, 505 U.S. at 521, 112 S.Ct. 2608.

Accordingly, in order for all state common law tort claims to survive § 209(a), this Court must find that the preemption language of § 209(a) is more narrowly-tailored than the 1969 Act preemption language discussed in *Cipollone*. The Court, however, finds that § 209(a) of the CAA is comparatively more sweeping.

■ The operative phrase in § 209(a) is "adopt or attempt to enforce." As a result, if state common law tort actions are examples of "enforcement," then such actions (assuming that they are "related to" the control of emissions) are clearly preempted by § 209(a). The language in the 1969 Act, discussed in *Cipollone*, speaks of "requirements" and "prohibitions," but does not make specific mention of state common law actions to ensure compliance. Notwithstanding this fact, the Supreme Court inferred that the 1969 Act's preemption language encompassed certain state common law tort actions. Here, however, there is explicit language discussing "enforcement" of the CAA—a much more explicit reference to proceedings designed to ensure lawful conduct. As "it is the essence of the common law to *enforce* duties . . . ," *Cipollone*, 505 U.S. at 522, 112 S.Ct. 2608 (emphasis added), it is clear that a state common law tort action that questions whether a defendant complied with standards promulgated under the CAA is an example of a state attempting to enforce the CAA, and is therefore subject to preemption.

In refuting Defendants' preemption argument, Plaintiffs cite *Bates v. Dow Agro-*

*sciences LLC*, 544 U.S. 431, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005), where the Supreme Court considered preemption under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") and stated that "[if] Congress had intended to deprive injured parties of a long available form of compensation, it surely would have expressed that intent more clearly." *Id.* at 449, 125 S.Ct. 1788. The preemption clause at issue in *Bates* directed that a "[s]tate. shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C. § 136v(b). In the medical devices context, the Supreme Court has also held that "[i]t is, to say the least, difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct, and it would take language much plainer than the text of [21 U.S.C.] § 360k to convince us that Congress intended that result." *Medtronic v. Lohr*, 518 U.S. 470, 487, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (citation omitted).[3] Section 360k(a) of the Food, Drug and Cosmetic Act ("FDCA") states that:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a . requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a). Clearly, § 360k(a) of the FDCA and the FIFRA preemption

---

**3.** Later, the Supreme Court reiterated this point: " § 360k does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements." *Riegel v. Medtronic Inc.*, 552 U.S. 312, 330, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008).

provision discussed in *Bates* contain drastically different, and less expansive, language as compared § 209(a) of the CAA. Indeed, while FIFRA and the FDCA discuss a prohibition on imposing or establishing "requirements" in addition to or different from federal law, § 209(a) of the CAA specifically prohibits state *enforcement* of the federal law at issue. It is hard to contemplate language that would more plainly demonstrate Congress's intent to preempt state common law tort actions than the "attempt to enforce" language employed by Congress in § 209(a) of the CAA.

More comparable to the preemption language in § 209(a) of the CAA is the language found in the Airline Deregulation Act of 1978 ("ADA"). Under the ADA's preemption provision, states are expressly preempted from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier...." 49 U.S.C. § 41713(b)(1). In *Morales v. Trans World Airlines*, 504 U.S. 374, 383–84, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the Supreme Court held that, as a result of such language, "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted," *Id.* at 384, 112 S.Ct. 2031, and the Second Circuit has held that state common law tort actions come within the meaning of this rule. *See Weiss v. El Al Israel Airlines*, 309 Fed.Appx. 483, 484–85 (2d Cir.2009) ("The parties agree that a common-law tort action is a 'law, regulation, or other provision having the force and effect of law' within the meaning of the statute."). As a result, by analogy to the ADA's preemption provision, § 209(a)'s language unambiguously and expressly preempts state common law tort actions, provided that they "relate to" the control of emissions.

New York courts are particularly protective of common law rights, but the First Department of the Appellate Division of the New York Supreme Court recently came to the same conclusion. *In re Office of Attorney General of State of New York*, 269 A.D.2d 1, 709 N.Y.S.2d 1 (1st Dep't 2000) ("Detroit Diesel"). Specifically, the First Department considered whether § 209(a) prevented the New York Attorney General from pursuing claims related to the defendants' "manufacture of heavy-duty diesel engines which, purportedly, were equipped with electronic devices specifically designed to circumvent Federal emissions controls...." *Id.* at 3, 709 N.Y.S.2d 1. The First Department held that the Attorney General was "seeking to use this State's common law to penalize the manufacturers for producing engines which failed to comply with the Federal standards promulgated pursuant to the CAA," and found that the CAA preempted such state common law claims. *Id.* at 11, 709 N.Y.S.2d 1. The court reasoned that "[w]ere [it] to allow these claims to proceed, and were claims similar to these to proceed in our 49 sister States, the chaotic situation which Congress sought to avoid would become an overnight reality. In sum, States cannot be allowed to do indirectly what they cannot do directly...." *Id.* at 11, 709 N.Y.S.2d 1.

Accordingly, state common law tort claims are clearly subject to preemption under § 209(a) of the CAA. Therefore, the Court must now consider whether Plaintiffs' specific claims "relate to" the control of emissions.

### III. Plaintiffs' Claims "Relate to" the Control of Emissions

 Prior case law clearly indicates that the phrase "relating to" evinces an "expansive" intent. *Morales*, 504 U.S. at 383, 112 S.Ct. 2031; *Cable Tel.*, 954 F.2d at

101; *Metro. Taxicab,* 633 F.Supp.2d at 102. Accordingly, enforcement actions that have any "connection with or reference to" the control of emissions from motor vehicles are preempted by § 209(a). *See Morales,* 504 U.S. at 384, 112 S.Ct. 2031; *See Metropolitan Taxicab Board of Trade v. City of New York,* 615 F.3d 152, 156 (2d Cir.2010) ("Determining whether a state law relates to a preempted subject matter requires examining whether the challenged law contains a reference to the preempted subject matter or makes the existence of the preempted subject matter essential to the law's operation."). Plaintiffs' negligence claims regarding Defendants' compliance with CAA emissions standards fit squarely within this category.

 In *Wyeth v. Levine,* 555 U.S. 555, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009), the Supreme Court held that state law failure to warn claims were not preempted by Food and Drug Administration ("FDA") regulations in part because such tort actions would not "obstruct the federal regulation of drug labeling." *Id.* at 1204. Allowing the instant failure to warn claims to go forward, however, would obviously run afoul of the plain wording and original purpose of § 209(a)—that "vehicle manufacturers not be subject to 50 sets of requirements relating to emission controls which would unduly burden interstate commerce." H.R.Rep. No. 95–294, *as reprinted in* 1977 U.S.C.C.A.N. 1077, 1388. In addition, where "failure to warn claims are themselves premised on defective design claims found to be preempted, the ... failure to warn claims are also preempted [by] federal law." *Carden v. Gen. Motors Corp.,* 509 F.3d 227, 233 (5th Cir.2007); *Irving v. Mazda Motor Corp.,* 136 F.3d 764, 770 (11th Cir.1998). As warnings and instructions regarding emissions are obviously "related to" the control of emissions and the promulgation of emissions stan-

dards, § 209(a) preempts Plaintiffs' failure to warn claims as well.

Plaintiffs argue that § 209(d) tempers the phrase—found in § 209(a)—"any standard relating to the control of emissions." (Pl. Mem. 4.) Under § 209(d):

> Nothing in this part shall preclude or deny to any State or political subdivision thereof the right otherwise to control, regulate, or restrict the use, operation, or movement of registered or licensed motor vehicles.

42 U.S.C. § 7543(d). This section, however, concerns state regulation of the use or operation of motor vehicles subsequent to their sale (e.g., access to certain lanes of traffic, engine idling rules), not emissions standards that manufacturers must follow. *See Sims v. Florida Dep't of Highway Safety & Motor Vehicles,* 862 F.2d 1449, 1455 n. 8 (11th Cir.1989) ("[t]he Clean Air Act further indicates Congress's intent to exclusively enforce federal emission standards relating to new automobiles before their initial sale because the statute specifically allows the state to regulate automobile use and operation *subsequent* to the initial sale." (emphasis in original)). As such, this section is not helpful to Plaintiffs' argument.

 In addition, the Court would be remiss if it did not mention § 304(e) of the CAA, which states that:

> Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency).

42 U.S.C. § 7604(e). The specific purpose of § 304(e) is to ensure that the ability to bring a citizen suit under the CAA (for injunctive relief or civil penalties) does not prevent citizens from bringing other kinds

of actions relating to similar subject matter. Although, at first glance, the wording of this provision appears to bolster Plaintiffs' argument, it is clear that the preemptive intent of § 209(a) trumps § 304(e), as Congress has made it abundantly clear that the regulation of motor vehicle emissions is an area of particular congressional concern. *See* 42 U.S.C. § 7416 (specifically mentioning the preemption of "[s]tate regulation of moving sources"); *Gutierrez v. Mobil Oil Corp.*, 798 F.Supp. 1280, 1284 n. 6 (W.D.Tex.1992) ("[t]he specific items expressly preempted from state regulation, specifically moving sources, are, of course ... preempted."). Stated differently, although the citizen suit provisions of § 304 do not preempt Plaintiffs' state common law tort claims, the language of § 209(a) does so expressly.

■ As a pleading matter, Plaintiffs do not adequately allege that the Defendants' alleged failure to warn was a proximate cause of Plaintiffs' injuries. As New York State law requires employers to manage—and warn employees about—toxic substances in the workplace, 12 NYCRR § 12–1.4; N.Y. Labor Law § 876, any warnings provided by Defendants would appear to be redundant. Indeed, New York State law requires that "[e]nclosed areas in which internal combustion motor vehicles are operated and release dangerous air contaminants ... be provided with means to remove or control the fumes, gases or vapors released or disseminated," 12 NYCRR § 12–2.9, and that "[e]very employer shall instruct his employees as to the hazards of their work, the use of the control or protective equipment and their responsibility for complying with the provisions of this Part." 12 NYCRR § 12–1.4(b)(2).

■ Although Plaintiffs do not have a direct remedy against Defendants for their alleged violation of CAA standards and failure to warn about diesel exhaust fumes, this does not mean that the Plaintiffs are left without any remedy. Indeed, Plaintiffs' allegedly damaging exposure to diesel exhaust fumes could have been the result of improper ventilation. In *Gasperino v. Larsen Ford, Inc.*, 426 F.2d 1151 (2d Cir. 1970), the plaintiff was one of several car dealership employees performing maintenance on roughly 100 brand new Ford Mustangs in a storage basement owned by the defendant, where the cars were being hidden from public view prior to a promotional campaign. *Id.* at 1152. In order to properly position the cars to perform the necessary work, employees had to start the vehicles frequently. *Id.* at 1152–53. As a result, according to a witness, there "was a quite a bit of raw exhaust fumes in the air." *Id.* at 1153. On the fourth day that the plaintiff was engaging in these maintenance tasks, he collapsed and eventually died. *Id.* at 1152. The uncontroverted medical evidence demonstrated that the "proximate cause of death was carbon monoxide poisoning which precipitated the fatal heart attack." *Id.* Following a bench trial, the district court found that, in "fail[ing] to provide means of ventilation to exhaust the carbon monoxide generated during the course of readying the cars," the defendant dealership violated N.Y. Labor Law § 200. *Id.* at 1153–55. As a result, the Court found that the defendant was negligent. *Id.* Similarly, the instant Plaintiffs' alleged injuries could have been caused by a failure on the part of their employer to ventilate or to warn about inadequate ventilation. Such allegations would likely articulate a viable negligence claim. Stated differently, although the CAA preempts state common law tort claims relating to the control of emissions, it does not preempt such claims with regard to ventilation.

Accordingly, Plaintiffs' negligence claim relating to the design of the engines must be dismissed because there is no private

right of action under the CAA and because the CAA preempts such a claim. Plaintiff's failure to warn claims must also be dismissed because the claims are preempted and, in any event, Plaintiffs failed to adequately plead proximate causation.[4]

### CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is GRANTED in its entirety. Defendant Cummins' motion to dismiss for failure to make timely service is, therefore, moot. The Clerk of Court is directed to enter judgment and to close this case (docket number 08 Civ. 10879).

Further, the Clerk of Court is directed to enter judgment and to close the related cases—docket numbers 09 Civ. 9119, 09 Civ. 9120, and 10 Civ. 6189—as the claims involved in these actions are identical to the claims alleged in 08 Civ. 10879, and are therefore likewise preempted for the reasons discussed in this opinion.

---

4. Plaintiffs' spouses' claims must likewise be dismissed, as they are derivative of the preempted claims.