70 A.3d 714

ST. PETER'S UNIVERSITY HOSPITAL, PLAINTIFF–APPELLANT, v. NEW JERSEY BUILDING LABORERS STATEWIDE WELFARE FUND, DEFENDANT/THIRD–PARTY PLAINTIFF–RESPONDENT, AND LOCAL 469 TEAMSTERS HEALTH AND WELFARE FUND, LOCAL 88 WELFARE FUND, LOCAL 966 TEAMSTERS HEALTH FUND, PLAINTIFF LABORATORIES, INC., LOCAL 348 HEALTH & WELFARE FUND, SPECTRUM FOR LIVING, DEFENDANTS, v. UNION LABOR LIFE INSURANCE COMPANY, THIRD–PARTY DEFENDANT–RESPONDENT.

ST. PETER'S UNIVERSITY HOSPITAL, PLAINTIFF–APPELLANT, v. LOCAL 594–BUILDING LABORERS WELFARE FUND, DEFENDANT/THIRD–PARTY PLAINTIFF–RESPONDENT, v. UNION LABOR LIFE INSURANCE COMPANY, THIRD–PARTY DEFENDANT–RESPONDENT.

ST. PETER'S UNIVERSITY HOSPITAL, PLAINTIFF–APPELLANT, v. LOCAL 94 HEALTH AND WELFARE FUND, LOCAL 138 WELFARE FUND, LOCAL 25–SHEET METAL WORKERS WELFARE FUND, EMPLOYEE SECURITY FUND OF THE ELECTRICAL PRODUCTS INDUSTRIES, INDEPENDENT CARE PLUS, LOCAL 1181 WELFARE FUND, BUILDING TRADES WELFARE BENEFIT FUND, BUILDERS GENERAL SUPPLY COMPANY, DEFENDANTS, AND NEW JERSEY BUILDING LABORERS STATEWIDE WELFARE FUND, DEFENDANT/THIRD–PARTY PLAINTIFF–RESPONDENT, v. UNION LABOR LIFE INSURANCE COMPANY, THIRD–PARTY DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 30, 2013—Decided July 2, 2013.

448

Before Judges AXELRAD, NUGENT and HAAS.

*Camille Kassar* argued the cause for appellant (*Maloof, Lebowitz, Connahan & Oleske,* attorneys; *Anthony J. Chirles, Jr.,* on the brief).

*Seth Ptasiewicz* argued the cause for respondent New Jersey Building Laborers Welfare Fund (*Kroll Heineman Carton, LLC,* attorneys; *Michael G. McNally,* on the brief).

*Andrew O. Bunn* argued the cause for respondent Union Labor Life Insurance Company (*DLA Piper LLP,* attorneys; *Mr. Bunn* and *James V. Noblett,* on the brief).

The opinion of the court was delivered by

AXELRAD, P.J.A.D.

In these consolidated appeals, we decide whether the Employee Retirement Income Security Act (ERISA), 29 *U.S.C.A.* § 1001 to – 1461, preempts a medical provider's claims against the ERISA benefit plan for payment of the provider's customary fees for the services it rendered to patients rather than the discounted fees the plan would have been legally entitled to pay had it not breached its contractual obligation for timely payment. We are satisfied the provider's claims are expressly preempted by Section 514(a) of ERISA, 29 *U.S.C.A.* § 1144(a), and thus affirm summary judgment dismissal of the complaints.

## I.

The facts are, for the most part, undisputed. Plaintiff, St. Peter's University Hospital (the Hospital), is a medical facility that provides health care to the general public, including individuals who are entitled to receive services under health care plans. Defendant New Jersey Building Laborers Statewide Welfare Fund [1] and its predecessor, defendant Local 594—Building Labor-

---

[1] New Jersey Building Laborers Statewide Welfare Fund was improperly named in the complaint as New Jersey Building Laborers State Welfare Fund.

ers Welfare Fund (collectively referred to as the Fund), are employee welfare benefit plans that provide medical benefits to participants and their dependents. Third-party defendant Union Labor Life Insurance Company (Union Labor Life) is a claims administrator and processor that provides services to the Fund under an administrative services agreement. MagNet, Inc. (Mag-Net) is a preferred provider organization (PPO) that contracts with employer groups and insurance carriers to make available to covered persons the option of receiving health care at hospitals within the network.

On August 22, 1995, the Hospital and MagNet entered into an agreement (hospital agreement) in which the Hospital, as a network hospital, agreed to provide medical services to eligible persons insured by group health coverage providers, such as the Fund, at a reduced rate of payment established by MagNet. The discount was conditioned on timely payment under the contract, i.e., thirty days after receiving a clean claim.[2] If not timely paid, the insurance provider would "lose the benefit of the MagNet discounted reimbursement rate" and the Hospital could bill and collect from the insurance provider and eligible person its customary rate for the services. Upon authorization from MagNet, the Hospital could pursue any remedies available under law. The hospital agreement was amended on February 11, 2002, to remove the authorization requirement and permit the Hospital to "pursue reimbursement at One Hundred Percent (100%) of full billed charges using any remedies available at law" if the insurance provider failed to pay a "Clean Claim for Covered Hospital Services rendered to an Eligible Person" within the contractual time frames.

---

[2] A "clean claim" is defined as "any claim for payment received from a Provider which includes a properly completed claim form and which, for proper adjudication, does not require medical records or information or any further action with respect to coordination of benefits with any other payor determined to be primary."

MagNet and the Fund entered into a subscriber agreement on February 8, 2001, containing similar terms. Specifically, the agreement provided for discounted payment to the Hospital conditioned on timely payment, i.e., thirty days after receipt of the submitted clean claim.

In these cases involving three separate patients insured by the Fund, the Fund paid the Hospital's discounted rates well beyond the thirty-day period. On April 2 and 3, 2004, the Hospital provided medical services to Patricia Desanto totaling $16,560.31. It submitted a clean claim on April 13, 2004, and received $2272 payment from the Fund on or about September 27, 2004. From June 16, 2004 through June 29, 2004, the Hospital provided medical services to Francis Almeida totaling $77,152.43. It submitted a clean claim on July 7, 2004, and received $29,536 payment from the Fund on or about March 7, 2005. From August 23, 2004 through August 25, 2004, the Hospital provided medical services to Kimberly Krupa totaling $19,312.39. It submitted a clean claim on September 2, 2004, and received $4544 payment from the Fund on or about June 20, 2005.

On April 8, 2010, the Hospital filed a complaint (Docket No. L–2666–10) against the Fund, seeking to recover the $14,288.31 balance due for services provided to Desanto.[3] On April 19, 2010, the Hospital filed a complaint (Docket No. L–2820–10) against the Fund, alleging it owed the balance of $47,589.43 [4] for services rendered to Almeida. On June 23, 2010, the Hospital filed a complaint (Docket No. L–4712–10) against the Fund, seeking to recover the $14,768.39 balance due for services provided to Krupa. In all three complaints the Hospital alleged the Fund was not

[3] The complaints pertaining to Desanto and Krupa included claims involving other patients and other group health care providers that are not involved in this appeal.

[4] Based on our review of the record, it appears the Hospital mistakenly transposed numbers in its calculations, subtracting $29,563, rather than $29,536, from $77,152.43, and the actual balance due was $47,616.43.

eligible to pay the discounted rate because it failed to make payment within the contractually required time period, and the Fund was unjustly enriched to the Hospital's detriment. The Hospital sought to recover the difference between the discounted rates and the customary rates for the services rendered to the three patients.

In each case, the Fund filed an answer and third-party complaint against Union Labor Life for indemnity for failure of its claims processor to timely pay the claims. Union Labor Life answered the third-party complaints.

Following the completion of discovery, Union Labor Life filed motions for summary judgment in all three cases to dismiss the Hospital's complaints, alleging the claims were preempted by ERISA. The Hospital opposed the motions and filed cross-motions for summary judgment against the Fund.

At the conclusion of oral argument on October 14, 2011, Judge Phillip Paley granted Union Labor Life's motions for summary judgment and denied the Hospital's cross-motions for summary judgment. Judge Paley found state law claims against the Fund were expressly preempted by Section 514(a) of ERISA and should be dismissed. The Hospital appealed the orders in all three cases, and we consolidated the appeals.

On appeal, the Hospital argues:

POINT I

THE HOSPITAL'S CLAIMS FOR BREACH OF CONTRACT AND UNJUST ENRICHMENT ARE NOT PREEMPTED BY ERISA AS THEY DO NOT RELATE TO THE PLAN.

POINT II

THE TRIAL COURT ERRED GRANTING THE MOTION FOR SUMMARY JUDGMENT BASED UPON HEARSAY FROM [UNION LABOR LIFE'S] COUNSEL.

1. [UNION LABOR LIFE'S] MOTION FOR SUMMARY JUDGMENT WAS DEVOID OF ANY CERTIFICATION OR AFFIDAVIT FROM AN INDIVIDUAL WITH COMPETENT KNOWLEDGE.

2. THE TRIAL COURT ERRED IN BASING ITS DECISION SOLELY UPON AN ERRONEOUS UNPUBLISHED DISTRICT COURT DECISION.

3. THE TRIAL COURT ERRED IN DISREGARDING OR FAILING TO CONSIDER THE PARTIES' CONTRACTS.

*POINT III*

RESPONDENTS ARE PRECLUDED FROM ASSERTING THE DEFENSE OF ERISA PREEMPTION UNDER THE DOCTRINES OF WAIVER AND EQUITABLE ESTOPPEL.

*POINT IV*

PREEMPTION WILL RESULT IN THE UNJUST ENRICHMENT OF [THE FUND].

*POINT V*

ERISA DOES NOT AFFORD [THE HOSPITAL] WITH ADEQUATE REMEDIES FOR RECOVERY.

*POINT VI*

THE PREEMPTION OF THE HOSPITAL'S STATE LAW CLAIMS IS CONTRARY TO PUBLIC POLICY AND THE GOALS OF CONGRESS.

*POINT VII*

THE TRIAL COURT SHOULD HAVE GRANTED SUMMARY JUDGMENT IN FAVOR OF THE HOSPITAL.

## II.

When reviewing a grant of summary judgment, we employ the same standards used by the motion judge under *Rule* 4:46. *Henry v. N.J. Dep't of Human Servs.*, 204 *N.J.* 320, 330, 9 *A.3d* 882 (2010); *Prudential Prop. & Cas. Ins. Co. v. Boylan*, 307 *N.J.Super.* 162, 167, 704 *A.2d* 597 (App.Div), *certif. denied*, 154 *N.J.* 608, 713 *A.2d* 499 (1998). We first consider whether the moving party has demonstrated that there were no genuine disputes as to material facts, viewed in the light most favorable to the non-moving party, *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 523, 666 *A.2d* 146 (1995). We need not address this step because the matter proceeded on cross-motions, and plaintiffs do not claim that there are material issues of fact.

We then decide whether the motion judge's application of the law was correct. *Atl. Mut. Ins. Co. v. Hillside Bottling Co.*, 387 *N.J.Super.* 224, 231, 903 *A.2d* 513 (App.Div.), *certif. denied*, 189 *N.J.* 104, 912 *A.2d* 1264 (2006). In so doing, we accord no deference to the motion judge's conclusions on issues of law, *Estate of Hanges v. Metro. Prop. & Cas. Ins. Co.*, 202 *N.J.* 369,

382–83, 997 *A*.2d 954 (2010); *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan*, 140 *N.J.* 366, 378, 658 *A*.2d 1230 (1995), which we review de novo. Specifically, the issue of " '[w]hether a state law claim is preempted by ERISA is a question of law which is reviewed de novo.' " *Feit v. Horizon Blue Cross & Blue Shield of N.J.*, 385 *N.J.Super.* 470, 482, 897 *A*.2d 1075 (App.Div.2006) (quoting *Finderne Mgmt. Co. v. Barrett*, 355 *N.J.Super.* 170, 185, 809 *A*.2d 842 (App.Div.2002), *certif. denied*, 177 *N.J.* 219, 827 *A*.2d 287 (2003)).

■ We now address the Hospital's arguments in light of our standard of review. The Hospital does not dispute that the Fund is an ERISA plan.[5] The Hospital asserts, however, that its claims for breach of contract and unjust enrichment merely "involve" an ERISA plan and have too attenuated a connection to the plan to warrant preemption under the "related to" standard of the statute. We disagree.

ERISA is a "comprehensive regulatory scheme" enacted by Congress "to protect participants of employee benefit plans and their beneficiaries from the abuses which previously existed in many retirement plans." *Bd. of Trs. of Operating Eng'rs Local 825 Fund Serv. Facilities v. L.B.S. Constr. Co.*, 148 *N.J.* 561, 565, 691 *A*.2d 339 (1997) (internal quotation marks and citations omitted). ERISA governs private employee benefit plans, and sets forth requirements, uniform standards, fiduciary responsibilities, and penalties. *See L.B.S. Constr., supra*, 148 *N.J.* at 566, 691 *A*.2d 339; 29 *U.S.C.A.* § 1003(a).

There are two types of preemption established under ERISA: complete preemption under Section 502(a),[6] which is inapplicable

---

[5] As the Hospital's counsel conceded this fact at oral argument before us, we need not address the Hospital's arguments in II.1 challenging the sufficiency of the documents submitted by Union Labor Life respecting the Plan.

[6] Complete preemption under Section 502(a) of ERISA, 29 *U.S.C.A.* § 1132(a), "preempts any state-law cause of action, even if pleaded in terms of state law,

here, and express preemption under Section 514(a), which preempts state law claims that "relate to" an ERISA plan. Specifically, the statute pertaining to express preemption states, in pertinent part, that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan...." 29 *U.S.C.A.* 1144(a) (emphasis added).

Courts have given the phrase "relate to" a broad commonsense meaning. *Pilot Life Ins. Co. v. Dedeaux*, 481 *U.S.* 41, 47, 107 *S.Ct.* 1549, 1553, 95 *L.Ed.*2d 39, 48 (1987); *Finderne, supra,* 355 *N.J.Super.* at 188, 809 *A.*2d 842 (citing *Shaw v. Delta Air Lines, Inc.*, 463 *U.S.* 85, 96–97, 103 *S.Ct.* 2890, 2899–2900, 77 *L.Ed.*2d 490, 501 (1983)). A "'law "relates to" an employee benefit plan ... if it has a connection with or reference to such a plan.'" *L.B.S. Constr., supra,* 148 *N.J.* at 566, 691 *A.*2d 339. (alteration in original) (quoting *Shaw, supra,* 463 *U.S.* at 96–97, 103 *S.Ct.* at 2900, 77 *L.Ed.*2d at 501). *See also United Wire, Metal & Mach. Health & Welfare Fund v. Morristown Mem'l Hosp.*, 995 *F.*2d 1179, 1192 (3d Cir.) ("A rule of law relates to an ERISA plan if it is specifically designed to affect employee benefit plans, if it singles out such plans for special treatment, or if the rights or restrictions it creates are predicated on the existence of such a plan.") (footnotes omitted), *cert. denied sub nom.,* 510 *U.S.* 944, 114 *S.Ct.* 382, 126 *L.Ed.*2d 332 (1993). "ERISA preempts state laws even when those laws are not specifically designed to affect ERISA-covered plans or affects them indirectly." *L.B.S. Constr., supra,* 148 *N.J.* at 566, 691 *A.*2d 339.

However, "although ERISA preemption is 'clearly expansive,' to interpret the language to its furthest extent would render the reach of the provision limitless." *Id.* at 568, 691 *A.*2d 339 (quoting *N.Y. Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 *U.S.* 645, 655, 115 *S.Ct.* 1671, 1677, 131 *L.Ed.*2d 695, 705 (1995)). Therefore, "[p]reemption does not occur

when the claim is, in reality, based on federal law." *Feit, supra,* 385 *N.J.Super.* at 484, 897 *A.*2d 1075.

'if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability.'" *L.B.S. Constr., supra,* 148 *N.J.* at 569, 691 *A.*2d 339 (quoting *Travelers, supra,* 514 *U.S.* at 661, 115 *S.Ct.* at 1680, 131 *L.Ed.*2d at 708–09).

■ A state law claim relates to an employee benefit plan if "the existence of an ERISA plan [is] a critical factor in establishing liability" and "the trial court's inquiry would be directed to the plan[.]" *1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers,* 968 *F.*2d 401, 406 (3d Cir.), *cert. denied,* 506 *U.S.* 1086, 113 *S.Ct.* 1066, 122 *L.Ed.*2d 370 (1993). In *Nobers,* the Third Circuit considered whether a suit by former employees who had been promoted to salaried, non-union positions alleging breach of contract by their employer that resulted in the lowering of their pensions was preempted by Section 514(a). *Id.* at 404. The employees maintained that had they been demoted to union positions, as required by their contract, they would have received greater pension and related benefits than what they were entitled to as salaried employees. *Ibid.* The Court of Appeals concluded that the employees' claims "'relat[ed] to'" an ERISA plan and thus were preempted by Section 514(a). *Id.* at 406. The court reasoned that the claims depended on an ERISA plan's existence, noting that "if there were no plan, there would have been no cause of action," and a court would have to review the ERISA plan when calculating damages, even though the employer, not the plan, would be liable for damages. *Ibid.*

In *Kollman v. Hewitt Assocs., LLC,* 487 *F.*3d 139 (3d Cir.2007), the Third Circuit found a professional malpractice claim, based on the failure of a pension plan administrator to provide correct pension amounts, was expressly preempted because it went to "the essence of the function of an ERISA plan—the calculation and payment of the benefit due to a plan participant." *Id.* at 150. Moreover, in order to determine whether the calculation error constituted malpractice, the court would need to consult the plan. *Ibid.* Therefore, "[a]ny adjudication of Kollman's state law mal-

practice claim would necessarily require a court to consider the Plan in detail in order to properly address Kollman's arguments outside the mechanism prescribed by ERISA." *Ibid.*

By contrast, in *Providence Health Plan v. McDowell,* 385 *F.*3d 1168, 1172 (9th Cir.2004) the Ninth Circuit held that an action by an insured for reimbursement of benefits paid to individual plan participants who received funds in an independent recovery action and failed to comply with the reimbursement provision of their plan was not preempted by Section 514(a). The court concluded that the insured's "action for breach of contract does not have the requisite 'connection with' or 'reference to' an ERISA plan" because the insured was "simply attempting, through contract law, to enforce the reimbursement provision" incorporated in the ERISA plan. *Ibid.* The court reasoned that because the insured had "already paid ERISA benefits on behalf of" the plan participants and was "not disputing the correctness of the benefits paid[,]" adjudication of the insured's claim "does not require interpreting the plan or dictate any sort of distribution of benefits." *Ibid.* Thus, it was "merely a claim for reimbursement based upon the third-party settlement" and did "not 'relate to' the plan." *Ibid.*

Additionally, the Eleventh, Tenth, and Fifth Circuits have found certain state causes of action by health care providers against insurance companies were not preempted. *See, e.g., Lordmann Enters., Inc. v. Equicor, Inc.,* 32 *F.*3d 1529, 1533–34 (11th Cir. 1994) (finding a claim for negligent misrepresentation was not preempted because the claim was only indirectly related to the plan and health care providers need to freely rely on insurers' representations as to coverage); *Hospice of Metro Denver, Inc. v. Grp. Health Ins. of Oklahoma, Inc.,* 944 *F.*2d 752 (10th Cir.1991) (holding a claim for promissory estoppel was not preempted because it was "a state law claim which does not affect the relations among the principal ERISA entities," and preemption could result in a reluctance of health care providers to extend care without prepayment (internal quotation marks and citation omit-

ted)); *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 *F*.2d 236, 250 (5th Cir.1990) (finding a claim for deceptive and unfair trade practices was not preempted because the relation to the ERISA plan was "incidental" and the claim was "independent of the plan's actual obligations under the terms of the insurance policy"). The claims in these cases were based on assurances that certain treatment would be covered under the plans, when ultimately the insurance companies denied coverage.

Several New Jersey cases have addressed the issue of ERISA preemption, but none are directly on point. The Supreme Court found in *L.B.S. Construction* that state laws survive ERISA preemption when the state law is "designed to address a unique local problem" and when Congress is willing to tolerate any potential interference between the law and ERISA. *Supra,* 148 *N.J.* at 567, 691 *A*.2d 339. There, the Court held that ERISA does not preempt suits by union trust funds against sureties that have issued bonds to employers for public works projects pursuant to the Bond Act because the Bond Act and ERISA serve different purposes. *Id.* at 576, 691 *A*.2d 339. Here, however, the breach of contract and unjust enrichment claims at issue do not address a "unique local problem."

In *Finderne,* we found ERISA did not preempt negligence and common law fraud claims against insurance agents who made misrepresentations involving the tax consequences of benefit plans to induce the plaintiffs to purchase life insurance. *Supra,* 355 *N.J.Super.* at 179, 809 *A*.2d 842. The claims involved "preplan misrepresentations" and did not "require an examination of the particulars of an ERISA plan." *Id.* at 193, 195, 809 *A*.2d 842. We found any reference to the ERISA plan would be "peripheral" and the duties involved in the case were outside the ERISA context. *Id.* at 195, 809 *A*.2d 842. Here, however, we are not dealing with an independent misrepresentation. Instead, our case deals directly with payment of benefits under the plan and would involve more than a peripheral reference to the plan.

In *Feit,* we found a doctor and his clinic's contract-based claims for compensation brought in state court for the insurance compa-

ny's alleged breach of a provider contract and failure to pay for services and treatments rendered to covered patients were not preempted by ERISA. *Supra,* 385 *N.J.Super.* at 484–85, 897 *A.*2d 1075. In contrast to our case, which involves express preemption under ERISA Section 514(a), *Feit* held that the claims were not subject to complete preemption under ERISA Section 502(a) because the medical service provider was neither a participant nor beneficiary of an ERISA plan and thus had no standing to sue in his own right. *Ibid.* As express preemption and complete preemption are separate doctrines, the analysis of *Feit* is not on point here.

The Hospital's reliance on *Pascack Valley Hospital, Inc. v. Local 464A UFCW Welfare Reimbursement Plan,* 388 *F.*3d 393 (3d Cir.2004) is similarly misplaced. Under similar facts to the present case, a medical services provider sought to recover an allegedly forfeited discount from a reimbursement medical expense plan in state court under a breach of contract theory. *Pascack, supra,* 388 *F.*3d at 395–97. The plan removed the case to federal court, and the District Court denied the hospital's motion to remand, concluding that the hospital's breach of contract claims against the plan were completely preempted by ERISA and thus raised a federal question supporting removal. *Id.* at 395. The Third Circuit characterized the case as presenting a "question of jurisdiction under the civil enforcement provision" of ERISA, 29 *U.S.C.A.* § 1132(a), and held that the hospital's complaint did not present a federal question that would support removal. *Id.* at 395. It remanded the proceedings to the state court, concluding that the hospital's state law breach of contract claims were not completely preempted by ERISA's civil enforcement provision, § 502(a), because there was no evidence the beneficiaries had assigned their claims to the hospital and because the hospital's claims were predicated on a legal duty independent of ERISA. *Id.* at 395, 402–04. The court did not address express preemption but merely noted that "[i]t may very well be that ... the Hospital's state law claims are pre-empted under § 514(a). These matters, however, go to the merits of the Hospital's breach

of contract claim, which can only be adjudicated in state court."
*Id.* at 404.

In concluding that the hospital's claim "related to" the ERISA plan and thus were preempted, Judge Paley reasoned that the claims "would not exist but for the presence of an ERISA plan that provided coverage to the patient" and the Fund is essential to the suit. We agree. The Hospital's state law claims are inextricably linked to the existence of the Fund's ERISA plan. The defendant in these cases is the Fund; the Hospital has asserted claims for payment of additional medical benefits that it contends are due from the Fund. Because the Hospital cannot assert a direct contractual relationship between itself and the Fund, its claims are based on the Fund's obligations under its subscriber agreement with MagNet. However, contrary to the Hospital's assertion, the inquiry before the court in these three lawsuits does not simply involve an interpretation of the terms of that agreement, including reference to the fee schedule established for covered services pursuant to Article III, 3.3, to determine whether the payment is accurate.

Rather, the plan itself is referenced and incorporated in that agreement, as well as the hospital agreement, in the definition of such terms as "covered services." Thus, in order to adjudicate the Hospital's claims, the court would be required to examine and consult the terms of the ERISA plan to determine whether the Fund was liable under either state law cause of action. If the court were to determine that the Hospital was entitled to an additional payment, it would mean that a benefit must be paid from the plan. And, before a benefit could be paid, an inquiry into the plan would be required to determine such items as whether the benefit was covered, the amount of the copayment, the amount of the deductible, whether the plan was primary and secondary and whether Medicare coverage is available for purposes of the coordination of benefits, and the cap on benefits to calculate the benefit due the Hospital. Accordingly, we are convinced the claims are neither tenuous nor peripheral but, rather, clearly "relate to" the ERISA plan within the intendment of the statute,

and are expressly preempted under Section 514(a). Judge Paley thus properly granted summary judgment to defendants and denied the Hospital's cross-motion for summary judgment.

Based on this conclusion, we summarily reject the Hospital's arguments that the trial judge failed to consider the parties' contracts (II.3), preemption will result in the Fund's unjust enrichment (IV), and preemption is contrary to public policy and the goals of Congress (VI). These theories are all bottomed in State common law. *See* 29 *U.S.C.A.* § 1144(c)(1) (providing that the term "State law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any state"); *Finderne*, 355 *N.J.Super.* at 185, 809 *A.*2d 842 ("ERISA embraces state common law claims.").

As we have concluded that ERISA preemption applies, these State common law claims are preempted. ERISA is a statutory mandate of Congress, so the parties cannot remove themselves from the boundaries of ERISA through a contract. *See Connolly v. Pension Benefit Guar. Corp.*, 475 *U.S.* 211, 223–24, 106 *S.Ct.* 1018, 1025, 89 *L.Ed.*2d 166, 178 (1986) ("Contracts, however express, cannot fetter the constitutional authority of Congress.... [W]hen contracts deal with a subject matter which lies within the control of Congress, they have a congenital infirmity. Parties cannot remove their transactions from the reach of dominant constitutional power by making contracts about them.").

The Hospital next argues the trial court erred in relying solely upon an unpublished District Court decision of Chief Judge Jerome Simandle. *Our Lady of Lourdes Health Sys. v. MHI Hotels, Inc.*, Civil No. 09–1895, 2009 *WL* 4510130, 2009 *U.S. Dist. LEXIS* 111875 (D.N.J. Dec. 1, 2009). Judge Paley did not rely on this case as precedential; rather he found the legal analysis of the federal court to be persuasive. *See* Pressler & Verniero, *Current N.J. Court Rules*, comment 2 on *R.* 1:36–3 (2013) (noting that although an unpublished opinion is not precedential, "it may nevertheless constitute secondary authority"); *Young v. Prudential Ins. Co. of Am.*, 297 *N.J.Super.* 605, 622, 688 *A.*2d 1069 (App.Div.1997) ("[I]nterpretation of federal law by federal courts

may be persuasive in a given case, and 'should be accorded due respect'") (citation omitted). Nevertheless, the extent of the trial judge's reliance on the unpublished District Court *Lourdes* case is immaterial to our analysis of the relevant case law, as the question of preemption is a legal issue that we review de novo. *See Feit, supra,* 385 *N.J.Super.* at 482, 897 *A.*2d 1075.

■ In Point III, the Hospital argues that by entering into the contract with MagNet, agreeing to provisions for discounted rates, and declaring the Hospital is entitled to utilize "'any remedy at law,'" the Fund waived any right to assert that the Hospital's claim is preempted by ERISA. The Hospital also contends that the doctrine of equitable estoppel applies and the Hospital provided services in reliance upon the contractual provisions. The Hospital, however, failed to raise this issue before the trial court, and thus we decline to address it on appeal. *See Nieder v. Royal Indem. Ins. Co.,* 62 *N.J.* 229, 234, 300 *A.*2d 142 (1973) (holding that appellate courts should not review issues not properly presented to the trial court when an opportunity for such a presentation is available "'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest[ ]'").

■ Lastly, in Point V, the Hospital argues that ERISA does not afford it an adequate remedy for the relief it seeks. The Hospital urges that due to the limitations of the claims procedure and extent of recoverable damages imposed by ERISA, filing an action governed by ERISA requirements is not a viable option for it. It would have to "'jump through hoops' and take multiple steps" under the Fund's Plan even before it could file suit. *See Harrow v. Prudential Ins. Co. of Am.,* 279 *F.*3d 244, 249 (3d Cir.2002) (generally requiring a plaintiff to exhaust the remedies available under the plan before a federal court will entertain an ERISA claim). It would then find itself in a federal judicial forum that generally defers to the broad discretionary authority of the plan administrators to determine eligibility for benefits or construe the terms of the plan. Moreover, its perception is that employee welfare plans such as the Fund's are heavily favored.

Additionally, even if the Hospital were successful, it complains that it would be limited in recovery to the benefits due under the plan.

The Hospital failed to present this argument to the trial court. *See Nieder, supra,* 62 *N.J.* at 234, 300 *A.*2d 142. Moreover, the Hospital's arguments as to inadequate administrative or judicial remedies are purely speculative. *See Harrow, supra,* 279 *F.*3d at 249 (requiring a plaintiff to make a " 'clear and positive showing of futility' " to warrant waiver of the exhaustion requirement) (citation omitted). The Hospital has failed to articulate any reason why the administrative requirement to pursue an appeal, and its presumed lack of success, would erode the long-established doctrine of ERISA express preemption.

Affirmed.