**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0585-16T3
              A-0586-16T3

DAVID L. FELIX and
LUIS M. FELIX,

    Plaintiffs-Respondents,

v.

VOLKSWAGEN GROUP OF AMERICA,
INC.,

    Defendant-Appellant,

and

JACK DANIELS VOLKSWAGEN,

    Defendant.

_____

EDUARDO DEANG,

    Plaintiff-Respondent,

v.

VOLKSWAGEN GROUP OF AMERICA,
INC.,

    Defendant-Appellant,

and

JACK DANIELS VOLKSWAGEN,

Defendant.

_____

Argued May 23, 2017 — Decided July 17, 2017

Before Judges Messano, Espinosa and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0053-16, and Bergen County, Docket No. L-0389-16.

Judson O. Littleton (Sullivan & Cromwell, LLP) of the District of Columbia bar, admitted pro hac vice, argued the cause for appellant (Chase, Kurshan, Herzfeld & Rubin, P.C., and Mr. Littleton, attorneys; Jeffrey L. Chase, on the briefs).

Michael D. Power argued the cause for respondents (Power & Associates, PC, attorneys; Mr. Power, on the briefs).

PER CURIAM

We granted leave to appeal in these two cases and consolidated the appeals because they present a common question of law. In A-0585-16, defendant Volkswagen Group of America, Inc. (VW), appeals from Judge Camille M. Kenny's order denying VW's motion to dismiss the complaint filed by plaintiffs David L. and Luis M. Felix; in A-0586-16, VW appeals from Judge Charles E. Powers' order denying its motion to dismiss the complaint of plaintiff Eduardo Deang. In both complaints, plaintiffs alleged VW misrepresented its vehicles' high performance capabilities while asserting each vehicle fully complied with federal emissions

standards set by the Environmental Protection Agency (EPA). Both complaints included causes of action for common law fraud and violations of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -184 (the CFA), and the Magnuson-Moss Warranty Federal Trade Commission Improvement Act, 15 U.S.C.A. §§ 2301 to 2312 (the MMWA), and breach of other implied warranties.

Before filing answers, VW moved to dismiss the complaints, arguing they were expressly or impliedly preempted by provisions of the Clean Air Act (the CAA), 42 U.S.C.A. §§ 7401 to 7671q. In particular, VW cited 42 U.S.C.A. 7543(a), which provides in pertinent part: "No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part." (Emphasis added). Judges Kenny and Powers concluded the CAA did not preempt plaintiffs' state law actions. We agree and affirm.[1]

---

[1] In the Law Division, VW moved for relief on grounds other than preemption, and it sought to compel arbitration of plaintiffs' claims. The motion judges denied those requests. Judge Kenny's order in the Felix matter generally denied VW's motion, but VW's motion for leave to appeal only sought our review on federal preemption grounds. VW did not seek leave to appeal from those portions of Judge Powers' order in the Deang lawsuit that specifically denied relief on other grounds.

I.

For purposes of our review, the allegations in plaintiffs' complaints are treated "as uncontradicted[,] . . . accord[ed] . . . all legitimate inferences . . . [and] accept[ed] . . . as fact." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 166 (2005). The Felix plaintiffs purchased a 2014 Volkswagen Passat with 2.0-liter diesel engine, and Deang purchased a 2010 Audi Q7 with a 3.0-liter diesel engine. VW marketed both vehicles as "Good Clean Diesel Fun," because they "deliver[ed] performance" while "being environmentally friendly," and the company represented "the performance of the vehicle . . . [was] achieved and achievable while complying with all vehicle emissions statutes, standards and regulations of the United States."

In reality, VW had installed "defeat devices" on the vehicles. This computer software allowed the cars to meet emissions standards during testing, but, during the vehicle's normal operation, the software interfered with emission controls, resulting in actual emissions that exceeded EPA standards. In fall 2015, the EPA issued formal Notices of Violation of the CAA to VW. Plaintiffs' complaints cited VW's public acknowledgement of its actions and alleged any repairs to "fix" the problem would result "in a profound loss of vehicle performance" and "value."

A-0585-16T3

Although not alleged in plaintiffs' complaints, we provide some additional information, which was known to the motion judges, is part of the appellate record and is largely undisputed. In January 2016, the Department of Justice filed suit on behalf of the EPA against VW in federal district court in the Northern District of California. Ultimately, that litigation resulted in a class action settlement approved by the court, which retained jurisdiction "to enforce, administer and ensure compliance" with the settlement. In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig., No. 15-MD-2672-CRB (JSC), 2016 U.S. Dist. LEXIS 14837 (N.D. Cal., Oct. 25, 2016) (2.0-liter settlement), and 2017 U.S. Dist. LEXIS 76091 (N.D. Cal., May 17, 2017) (3.0-liter settlement). The attorneys advised us at oral argument that plaintiffs have opted out of the settlement.

## II.

Because the sole issue presented — whether the CAA preempts plaintiffs' state-court actions — requires an interpretation of federal law, our review is de novo. In re Reglan Litig., 226 N.J. 315, 327-28 (2016), cert. denied, __ U.S. __, 137 S. Ct. 1434, 197 L. Ed. 2d 648 (2017); see also St. Peter's Univ. Hosp. v. N.J. Bldg. Laborers Statewide Welfare Fund, 431 N.J. Super. 446, 462 (App. Div.) ("[T]he question of preemption is a legal issue that we review de novo."), certif. denied, 216 N.J. 366 (2013).

"The doctrine of federal preemption finds its source in the Supremacy Clause of the United States Constitution. . . . A state law that conflicts with a federal statute is naturally preempted." Reglan Litig., supra, 226 N.J. at 328 (citing Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372, 120 S. Ct. 2288, 2294, 147 L. Ed. 2d 352, 361 (2000)). "When Congress legislates in a field where states have traditionally exercised their historic police powers, the preemption inquiry begins with the assumption that Congress did not intend to supersede a state statute unless that was [Congress's] clear and manifest purpose." Ibid. (alteration in original) (internal quotation marks omitted) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S. Ct. 2240, 2250, 135 L. Ed. 2d 700, 715 (1996)) (internal quotation marks omitted). "Accordingly, '[t]he purpose of Congress is the ultimate touchstone' of pre-emption analysis." Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516, 112 S. Ct. 2608, 2617, 120 L. Ed. 2d 407, 422 (1992) (alteration in original) (quoting Malone v. White Motor Corp., 435 U.S. 497, 504, 98 S. Ct. 1185, 1190, 55 L. Ed. 2d 443, 450 (1978)).

"Pre-emption may be either expressed or implied." Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98, 112 S. Ct. 2374, 2383, 120 L. Ed. 2d 73, 84 (1992). "Express preemption is determined from an examination of the explicit language used by

Congress." Gonzalez v. Ideal Tile Importing Co., 184 N.J. 415, 419 (2005) (citing Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S. Ct. 1305, 1309, 51 L. Ed. 2d 604, 613 (1977)), cert. denied, 546 U.S. 1092, 126 S. Ct. 1042, 163 L. Ed. 2d 857 (2006). "A federal enactment expressly preempts state law if it contains language so requiring." Bruesewitz v. Wyeth Inc., 561 F.3d 233, 239 (3d Cir. 2009), aff'd sub nom. Bruesewitz v. Wyeth L.L.C., 562 U.S. 223, 131 S. Ct. 1068, 179 L. Ed. 2d 1 (2011).

On the other hand,

> [t]here are two forms of implied preemption — field preemption and conflict preemption. Field preemption applies where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. Conflict preemption applies where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress . . . .
>
> [Reglan Litig., supra, 226 N.J. at 328-29 (citations omitted).]

VW argues the CAA both expressly and impliedly preempted plaintiffs' claims.

Consideration of VW's preemption argument requires some review of Title II of the CAA, 42 U.S.C.A. §§ 7521 to 7554, which governs vehicle emissions and fuel standards. Title II requires the EPA to test all new motor vehicles and engines and issue

A-0585-16T3

certificates of compliance, see 42 U.S.C.A. § 7525(a)(2); 40 C.F.R. §§ 86.094-21 to -30 (2015) (regulating the certification process), before a vehicle is introduced into commerce. 42 U.S.C.A. § 7522(a)(1). The CAA "provides a mechanism for the recall of engines when the EPA finds previously certified engines do not conform to emissions standards." Navistar, Inc. v. Jackson, 840 F. Supp. 2d 357, 359 (D.D.C. 2012); see also 42 U.S.C.A. § 7541(c)(1); 40 C.F.R. §§ 85.1801 to 1808 (2014). Title II also requires a manufacturer to warrant that engines of new vehicles are "designed, built, and equipped so as to conform at the time of sale with the applicable regulations . . . , and . . . [are] free from defects in materials and workmanship which cause such vehicle or engine to fail to conform with applicable regulations for its useful life." 42 U.S.C.A. § 7541(a)(1).

As noted, § 7543(a) prohibits any State or political subdivision from "adopt[ing] or attempt[ing] to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part." (Emphasis added). Congress enacted this section to ensure that "vehicle manufacturers not be subject to 50 sets of requirements relating to emissions controls which would unduly burden interstate commerce." Jackson v GMC, 770 F. Supp. 2d 570, 577 (S.D.N.Y. 2011) (quoting H.R. Rep. No. 95-294, 95th Cong. (1977),

8                                                      A-0585-16T3

as reprinted in 1977 U.S.C.C.A.N. 1077, 1388), aff'd sub nom., Butnick v. GMC, 472 F. App'x 80 (2d Cir. 2012). However, Title II also contains a savings clause which provides "[n]othing in this part shall preclude or deny to any State or political subdivision thereof the right otherwise to control, regulate, or restrict the use, operation, or movement of registered or licensed motor vehicles." 42 U.S.C.A. § 7543(d).[2]

## A.

VW argues Congress expressly preempted the field by prohibiting any State action to enforce a "standard relating to the control of emissions." 42 U.S.C.A. 7543(a). It argues the Supreme Court has recognized that "relating to," as used in other federal statutes, suggests "a broad pre-emptive purpose." Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383, 112 S. Ct. 2031, 2037, 119 L. Ed. 2d 157, 167 (1992). VW contends that plaintiffs'

---

[2] The CAA also permits private citizen suits: "Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency)." 42 U.S.C.A. § 7604(e)(1). Plaintiffs make no specific argument regarding the effect of this provision on our analysis. Moreover, at least one federal court has specifically held that regarding "moving sources" of emissions, "although the citizen suit provisions of § [7604] do not preempt . . . state common law tort claims, the language of § [7543(a)] does so expressly." Jackson, supra, 770 F. Supp. 2d at 578.

complaints are, in reality, attempts to enforce EPA's emission standards, because to succeed, plaintiffs must prove VW's vehicles exceeded those standards. We disagree.

In Cipollone, supra, 505 U.S. at 523-24, 112 S. Ct. at 2621, 120 L. Ed. 2d at 427, the Court explained that consideration of whether the plaintiff's state law claims were preempted by the Cigarette Labeling and Advertising Act (the Labeling Act), 15 U.S.C.A. §§ 1331 to 1341, required examination of "the legal duty that is the predicate" of the particular claim and whether it falls within the scope of the preemption provision. Accordingly, the Court analyzed each claim in light of the Labeling Act's provision that expressly prohibited states from requiring a health warning to appear on all cigarette advertisements and containers. Id. at 514, 112 S. Ct. at 2616, 120 L. Ed. 2d at 421.

Although the plurality found certain claims were preempted, the Court found two claims could go forward. First, the plaintiff's breach of express warranty claim was not preempted because "[a] manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty. . . . [T]he 'requirement[s]' imposed by an express warranty claim are not 'imposed under State law,' but rather imposed by the warrantor." Id. at 525, 112 S. Ct. at 2622, 120 L. Ed. 2d at 428 (second alteration in original) (emphasis in the

A-0585-16T3

original); see also Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 228-29, 115 S. Ct. 817, 824, 130 L. Ed. 2d 715, 725-26 (1995) (concluding the preemption provision of the Airline Deregulation Act, 49 U.S.C.A. § 41713(b)(1), did not bar plaintiffs' breach of contract claim because the "terms and conditions airlines offer and passengers accept are privately ordered obligations and . . . do not amount to a State's enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law" (alterations in original) (internal quotations and citation omitted)).

Second, the Court held the plaintiff's fraudulent misrepresentation claim, based on allegedly false statements of material fact made in advertisements, could proceed because the claims were not predicated on duties regarding smoking and health, which were presumptively preempted, but rather on a more general duty not to deceive. Cipollone, supra, 505 U.S. at 528-29, 112 S. Ct. at 2623-24, 120 L. Ed. 2d at 430-31.

Similarly, in Altria Group, Inc. v. Good, 555 U.S. 70, 72-73, 129 S. Ct. 538, 541-42, 172 L. Ed. 2d 398, 403-04 (2008), the plaintiffs contended the defendant cigarette manufacturer fraudulently marketed "light" cigarettes suggesting they were less dangerous than regular cigarettes. The defendant invoked the preemption clause prohibiting states from requiring additional

statements relating to smoking and health. Ibid. The Court concluded, as did the plurality in Cipollone, that the phrase in the Labeling Act's preemption provision "'based on smoking and health' fairly but narrowly construed does not encompass the more general duty not to make fraudulent statements." Id. at 87, 129 S. Ct. at 549, 172 L. Ed. 2d at 412. As a result, the Court held the Labeling Act's preemption provision did not preempt the plaintiffs' state-law fraud claim. Ibid.

VW argues these cases are not persuasive because the language of the CAA's preemption provision is broader and reflects Congress's intent to foreclose plaintiffs' state actions. However, in In re Caterpillar, Inc., No. 1:14-cv-3722, 2015 U.S. Dist. LEXIS 98784, at *43 (D.N.J. July 29, 2015), the federal district court cited Cipollone and Wolens in interpreting the preemptive reach of § 7543(a) of the CAA.[3] There, the class action plaintiffs alleged their diesel engine vehicles with an emissions control system designed to comply with EPA standards were defective, causing the vehicles to experience repeated engine

---

[3] We note that Rule 32.1(a) of the Federal Rules of Appellate Procedure does "not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like; and (ii) issued on or after January 1, 2007."

failures and shutdowns.  Id. at *2-3.  The plaintiffs further claimed the defendant manufacturer knew of the defects.  Id. at *3.

Although the court found the "plain wording" of § 7543(a) to be "specific and unambiguous," it also concluded the "provision does not foreclose all state common law actions involving alleged defects in engines manufactured and sold to comply with applicable emissions standards."  Id. at *30.  Distinguishing the case before it from others that interpreted section 7543(a), the court concluded:

> Plaintiffs' claims which seek enforcement of express and implied warranties for defects in the Engines' emissions systems, as well as those based on consumer fraud and negligent design, are hardly comparable to efforts by state and local governments to adopt or enforce emissions standards or to require additional certifications or inspections prior to sale.

> [Id. at *34-35 (emphasis added).]

VW argues Caterpillar is distinguishable because the plaintiffs' claims there sought damages for defective engines and did not "relat[e] to the control of emissions."  42 U.S.C.A. 7543(a).  It argues two other cases, Jackson, supra, 770 F. Supp. 2d at 570, and In re Detroit Diesel Corp. v. Attorney General of New York, 709 N.Y.S.2d 1 (App. Div. 2000), are more persuasive.

A-0585-16T3

In <u>Jackson</u>, the plaintiffs alleged the manufacturers of diesel buses violated the emissions standards set by the EPA and negligently failed to warn them about the dangers of the diesel engine exhaust fumes. <u>Jackson</u>, <u>supra</u>, 770 <u>F. Supp.</u> 2d at 572. The <u>Jackson</u> court interpreted the phrase "relating to" in § 7543(a) as reflecting an "expansive intent" and reasoned the CAA preempted any "enforcement actions that have any 'connection with or reference to' the control of emissions from motor vehicles." <u>Id.</u> at 576-77 (quoting <u>Morales</u>, <u>supra</u>, 504 <u>U.S.</u> at 383-84, 112 <u>S. Ct.</u> at 2037, 119 <u>L. Ed.</u> 2d at 167). Therefore, "a state common law tort action that questions whether a defendant complied with standards promulgated under the CAA is an example of a state attempting to enforce the CAA, and is therefore subject to preemption." <u>Id.</u> at 575.

In <u>Detroit Diesel</u>, <u>supra</u>, 709 <u>N.Y.S.</u>2d at 3, the court considered whether the CAA preempted a suit brought by New York's Attorney General against the manufacturer of heavy-diesel engines equipped with a defeat devices in the context of the manufacturer's motion to quash a subpoena duces tecum. The court concluded § 7543(a) was "intended to have a broad preemptive effect," <u>id.</u> at 7, such that "[s]tates are barred from providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by Federal law," <u>id.</u> at 8. The court also determined

any common law claims were preempted because they sought "to use [New York's] common law to penalize the manufacturers for producing engines which failed to comply with the Federal standards promulgated pursuant to the CAA. In doing so, the Attorney General [was] attempting to enforce those standards, and . . . he is expressly preempted from pursuing those claims." Id. at 9.

We acknowledge that the plaintiffs' claims in Caterpillar centered on defective engines that violated express and implied warranties and failed "to perform as an engine at all." Caterpillar, supra, at *33. Those claims are not precisely the same as plaintiffs' claims in these cases. However, we find Jackson, which alleged direct violations of EPA standards as a predicate for claims of personal injuries, to be entirely distinguishable. The Detroit Deisel court's overly expansive reading of § 7543(a), combined with the thinly-veiled nature of the Attorney General's enforcement action, limits the persuasive power of that opinion.

Instead, we follow the more persuasive reasoning advanced by courts in two other cases, Counts v. GM, L.L.C., No, 16-cv-12541, 2017 U.S. Dist. LEXIS 20277 (E.D. Mich. Feb. 14, 2017), and In re Volkswagen "Clean Diesel" Litigation, 94 Va. Cir. 189 (Cir. Ct. 2016,) both of which involved manufacturers' installation of defeat devices.

15

In Counts, the court concluded that "to the extent [p]laintiffs are suing GM for manufacturing a vehicle that emits 'more than a certain amount of [NOx or particulate emissions]' in violation of EPA regulations or that is not equipped with properly functioning and federally required 'emission-control technology,' their claims [were] preempted by the CAA." Counts, supra, at *35 (second alteration in original). However, citing Caterpillar and In re Volkswagen, the court concluded that the plaintiffs' claims of fraud and misrepresentation were

> not, as GM contends, contingent on proving that GM is in noncompliance with EPA emissions regulations. There can be no doubt that proving noncompliance would bolster Plaintiffs' claims, but Plaintiffs need not make that showing to prevail. Accordingly, Plaintiffs' claims are not preempted by the [CAA].
>
> [Id. at *41.]

Similarly, in In re Volkswagen, supra, 94 Va. Cir. at 189-90, the plaintiffs raised essentially the same claims about VW vehicles as do plaintiffs in these two appeals. The court rejected VW's preemption argument, reasoning,

> On their face, Plaintiffs' fraud and [statutory consumer fraud] claims do not rely on emissions violations or enforcement to make out their claims. Instead Plaintiffs' claims rely upon allegedly false promises of compliance, efficiency, and new technology; or concealment of the fact that compliance testing was being circumvented. Although

16

> Plaintiffs reference the EPA violation notice in support of their allegations of falsehood and concealment, their claims ultimately rest on and seek remediation of injuries arising from misrepresentations and concealment of material facts made to (or hidden from) the Plaintiffs about the compliance, efficiency, and technology of their vehicles. This is distinguished from the claims in <u>Jackson</u> and <u>Detroit Diesel</u>, which sought to recover for injuries from the alleged noncompliance itself, or alleged fraud based on statements or representations made to federal regulators by manufacturers in procuring emissions compliance certificates.
>
> Plaintiffs' lack of reliance on emissions standards is further revealed when one considers whether Plaintiffs even need to assert lack of compliance in raising their fraud and [statutory consumer fraud] claims. Plaintiffs point to advertising materials and news releases promising not only compliance with regulations, but also describing new technologies developed by [VW] and offering improved fuel economy. Plaintiffs also point to [VW]'s public statement that it had been "dishonest" to consumers in such advertising. As such, and although emissions compliance or lack thereof may be further proof of deceit, it is the deceit about compliance, rather than the need to enforce compliance, that is the gravamen of Plaintiffs' claims.
>
> [<u>Id.</u> at 196-97.]

Similarly, in the cases before us, plaintiffs do not seek to enforce an EPA emission standard or force the manufacturer to adopt a different emission standard. It may well be that plaintiffs will prove their vehicles failed to comply with EPA emission standards, something VW has publicly acknowledged, but

A-0585-16T3

the gravamen of plaintiffs' complaint centers on VW's alleged deceitful, fraudulent practices, and its alleged breach of a duty not to mislead consumers. We conclude § 7543(a) does not expressly preempt plaintiffs' causes of action.

We also conclude that the CAA does not impliedly preempt plaintiffs' complaints. Implied preemption occurs either when "the scheme of federal regulation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,'" or when "compliance with both federal and state regulations is a physical impossibility." Gade, supra, 505 U.S. at 98, 112 S. Ct. at 2383, 120 L. Ed. 2d at 84 (citations omitted).

We agree with the analysis of the Caterpillar court, i.e., that "the savings clause suggests that Congress did not intend to occupy the entire field of motor vehicle regulation. Instead, the [savings clause] explicitly contemplates continued state involvement in the regulation of motor vehicles." Caterpillar, supra, at *48. Furthermore, because plaintiffs' claims do not hinge on compliance with EPA standards, there can be no direct conflict with the federal regulatory scheme that requires compliance with those standards. Id. at *51-53.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0585-16T3